UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHAD C. CARTER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:07CV1581CDP/MLM |
| ) | |
| STEVE LARKINS,[1] ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the court is the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed by Petitioner Chad C. Carter ("Petitioner"). Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 6. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 2.

**I.**
**BACKGROUND**

In Count I of an Information dated October 9, 2003, Petitioner was charged with the felony of statutory sodomy in the first degree in that between September 1, 2000 and August 31, 2001, Petitioner had deviate sexual intercourse with M.C., by "touch[ing] the vagina of M.C., who was less than twelve years old. In Count II Petitioner was charged with the felony of statutory sodomy in the first degree in that between September 1, 2000, and August 31, 2001, Petitioner had deviate sexual intercourse with M.C., who was less than twelve years old, by having M.C. "touch his penis." In Count III Petitioner was charged with the class C felony of child molestation in the first degree in that

---

[1] Steve Larkins is now the Warden of the Eastern Reception, Diagnostic and Correctional Center, replacing Pat Smith. Therefore, the court has substituted Steve Larkins for Pat Smith pursuant to 28 U.S.C. § 2254, Rule 2(a).

between January 1, 1999, and August 28, 2000, Petitioner subjected M.C., who was less than twelve years old, to sexual contact. In Count IV Petitioner was charged with the class B felony of child molestation in the first degree in that between September 1, 2000, and August 31, 2001, Petitioner subjected M.C., who was less than fourteen years old, to sexual contact. In Count V Petitioner was charged with the class C felony of sexual misconduct involving a child by indecent exposure in that between September 2, 2000, and August 31, 2001, he "knowingly exposed his genitals to M.C., a child less than fourteen years of age, and did so in a manner that would cause a reasonable person to believe that such conduct was likely to cause affront to a child less than fourteen years of age." In Count VI Petitioner was charged with the class D felony of endangering the welfare of a child in the first degree in that between September 1, 2000, and August 31, 2001, Petitioner "knowingly engaged in deviate sexual intercourse with M.C., a child less than seventeen years old for whom [Petitioner] was a parent." Resp. Ex. A at 8-10. See also Carter v. State, 215 S.W.3d 206, 208 (Mo. Ct. App. 2006).

Petitioner pleaded guilty to all counts. At the plea hearing the prosecutor described the evidence which the State was prepared to present had Petitioner gone to trial as follows:

> [T]he defendant touched the vagina of his adoptive daughter, M.C.,[2] these events occurring between September 1st, 2000 and August 31st, 2001 in the family home ... . As I said, she was his adoptive child. She was between ... seven and nine when these events occurred. ... As to count one the defendant touched her vagina, she was less than twelve. He touched her with his mouth.
>
> As to count two, again all of the events took place in the family home ... and in the time frame I have already alleged. As to count two the defendant had the victim touch his penis with her hand and again she was less than twelve.

---

[2] The transcript reflects the full name of the victim. The court has substituted the victim's initials.

2

>    As to count three, the sexual contact that he subjected her to at a different date, but at the same location, between January 1st, 1999 and August 28, 2000, was that he rubbed her vagina, her vaginal area with his hand.
>
>    As to count four, the sexual contact and the time frame of September 1st, 2000 and August 31st, 2001 was that the defendant again rubbed the victim's vagina with his hand. These events occurred sometimes in the basement of his home on a sofa and sometimes in the bedroom of his home. His bedroom on a bed. Sometimes they occurred with the victim sitting on his lap.
>
>    As to count five, he exposed his genitals to the victim, she was less than 14. He did this again, in the family home between September 1st, 2000 and August 31st, 2001. He did this in a way that would cause a reasonable person to believe the contact was likely to cause affront or alarm to a child less than 14 years of age. And the way he did this was to masturbate in front of the victim in the bathroom, to the point that he ejaculated in front of her.
>
>    As to count six, between the dates of September 1st, 2000 and August 31st 2001, the defendant knowingly engaged in deviate sexual intercourse with her when she was less than 17 and he was a parent; to wit her adoptive parent, and in that count he rubbed her anus with his hand.

Resp. Ex. A at 35-37.

The prosecutor continued to state that it was the State's position that Petitioner's conduct in regard to Count VI "constitute[d] endangering the welfare of a child." Resp. Ex. A at 37. Petitioner testified before the court that the prosecutor's recitation of the facts was an accurate statement of what occurred. Resp. Ex. A at 37.

On March 15, 2004, Petitioner was sentenced as follows:

The court sentenced [Petitioner] to terms of twelve years for each of the counts of statutory sodomy, and twelve years for one count of first degree child molestation. The court also sentenced [Petitioner] to seven years for the additional count of child molestation in the first degree and seven years for the count sexual misconduct involving a child by indecent exposure. Finally, the court sentenced [Petitioner] to seven years' imprisonment for the charge of first degree endangering the welfare of a child.

Carter, 215 S.W.3d at 208; Resp. Ex. A at 14-17.

In an Amended Judgment issued on April 21, 2005, Petitioner was sentenced to four years

rather than seven for Count VI, endangering the welfare of a child in the first degree. Resp. Ex. A at 18-21. Petitioner's sentences are to be served concurrent with one another. Resp. Ex. A at 18-21.

Petitioner filed a pro se Motion to Vacate, Set Aside, or Correct the Judgment or Sentence. Resp. Ex. A at 61-74. Counsel was appointed and, on October 25, 2004, filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing. Resp. Ex. A at 75-97. After a hearing the motion court issued its Findings of Fact, Conclusions of Law, and Order on August 25, 2005. The motion court denied Petitioner's motion in all respects "other than the correction of [a] clerical error regarding the written judgment and sentence as to Count VI which ha[d] been corrected." Resp. Ex. A at 98-102.

Petitioner filed an appeal of the motion court's decision. Resp. Ex. C. On December 19, 2006, the Missouri appellate court denied Petitioner's appeal and affirmed the judgment of the motion court. Carter, 215 S.W.3d 206.

On September 10, 2007, Petitioner filed his § 2254 Petition in which he raises the following issues:

> **1**. The Missouri appellate court incorrectly addressed whether the plea court had a duty to advise Petitioner of the risk of commitment as a Sexually Violent Predator ("SVP") under Missouri's SVP Act, Mo. Rev. Stat. § 632.480.
>
> **2.** The Missouri appellate court erred in finding that Petitioner waived his claim that the trial court lacked jurisdiction to convict him of sexual misconduct involving a child because Mo. Rev. Stat. § 566.083 is unconstitutional.

Doc. 1.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review

pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784.

In Williams, 529 U.S. 362, the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

5

> correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

6

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

### III.
### EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)).

A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). In regard to the "prejudice" component of "cause and prejudice," "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995).

Also, prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the

federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Section 2244(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."

Where a State court dismisses a claim made in a State post-conviction relief motion on the grounds that the issue was procedurally defaulted under State law, a habeas petitioner may not raise the defaulted issue in a § 2254 petition. See Heffernan v. Norris, 48 F.3d 331, 333 (8th Cir. 1995) (holding that a federal court cannot consider claims which a state prisoner has procedurally defaulted in state court absent a showing of actual innocence or cause and prejudice). Even when the State court sets forth an alternative ruling based on the merits of a claim made pursuant to a State post-conviction relief motion, the State court "may make reference to a federal claim without opening the door to habeas review." Taylor v. Norris, 401 F.3d 883, 866 (8th Cir. 2005). The door to federal habeas review is not opened where the State court "sets forth in a clear and plain statement that it decision rests on state law grounds, and as long as those grounds are adequate and independent of federal claims." Id. See also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

Respondent contends that Petitioner has procedurally defaulted Ground 2 pursuant to Missouri procedure; that he has not suggested reasons to excuse its procedural default; and that, therefore, Ground 2 should be dismissed. Petitioner did not allege before the motion court that the court lacked jurisdiction to convict him of sexual misconduct because Mo. Rev. Stat. § 566.083 is unconstitutional. He raised this issue for the first time before the Missouri appellate court. In regard to this claim the Missouri appellate court held:

> [M]ovant claims that the court lacked jurisdiction to convict him of sexual misconduct involving a child because section 566.083 RSMo (2000) is unconstitutional. Movant acknowledges that his claim was not raised in his post-conviction motions, nor was it argued at any time prior to the instant appeal. Instead, movant attempts to assert his claim as a jurisdictional defect, rather than as a challenge to the constitutionality of the statute.
>
> Movant is correct that a guilty plea does not waive a claim that the court was without jurisdiction to enter the conviction or impose the sentence. Dorsey v. State, 115 S.W.3d 842, 845, n. 2 (Mo. banc 2003) (citing Hagan v. State, 836 S.W.2d 459, 461 (Mo. banc 1992)). However, movant's claim is presented pursuant to rule 24.035. Rule 24.035(a) specifically provides that a person who claims that his conviction or sentence violated the constitution or that the court imposing sentence was without jurisdiction to do so may seek relief pursuant to the provisions in the rule. Rule 24.035(a) states that the rule is the "exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated." Pursuant to Rule 24.035(d), a movant must declare that he has included all claims and acknowledge that any claim not included in the motion is waived.
>
> In his motion for post-conviction relief, movant did not challenge the constitutionality of the statute under which he was convicted, nor did he challenge jurisdiction of the court to do so. As previously noted, Rule 24.035 provides the exclusive procedure by which a person may seek relief in the sentencing court following a guilty plea for certain claims. The claims enumerated in Rule 24.035 include both constitutional challenges and jurisdictional challenges, and the rule mandates that these claims be presented in the motion for relief. It has been clearly stated that in the context of a post-conviction motion following a guilty plea, claims that could properly be raised in the motion but were not are waived. Edwards v. State, 954 S.W.2d 403, 408 (Mo. App. 1997) (citation omitted). Moreover, plain error review is not available to movant because the appellate court lacks jurisdiction to consider claims not raised in movant's post-conviction motion. Id.

> In his brief, movant relies upon State v. Burgin, 203 S.W.3d 713, 716 (Mo. App. 2006), a case recently decided by this court in which a defendant similarly failed to raise a constitutional challenge to section 566.083.1(1) at trial. The state argued that as a result, the issue was waived. Our court noted that the challenge in Burgin was to the validity of the statute under which the defendant was convicted, and because a conviction under a subsequently invalidated statute constitutes grounds for believing a manifest injustice has occurred, plain error review was appropriate. Id. at 716. However, the court in Burgin was faced with a question of preservation in the context of a direct criminal appeal following a jury verdict and judgment and sentence thereupon. In the instant case, movant pleaded guilty to the charge of sexual misconduct, and no direct appeal was filed. Instead, movant relied upon the relief provided by Rule 24.035. Therefore, he is constrained by the requirements of the rule.
>
> In light of the fact that the case is presented to us pursuant to a motion for post-conviction relief under rule 24.035, movant failed to preserve the issue for our review. Therefore, we are without jurisdiction to consider his claim. Point denied.

Carter, 215 S.W.3d at 211-12.

Thus, the Missouri appellate court found that Petitioner had not properly raised the issue of Ground 2 pursuant to Missouri procedural rules and that, therefore, he procedurally defaulted this issue. As such, the issue of Ground 2 is procedurally defaulted for purposes of federal habeas review and Petitioner may not raise the defaulted issue in his § 2254 petition. See Heffernan, 48 F.3d at 333. Petitioner does not suggest any reason why his procedural default of Ground 2 should be excused. The court finds, therefore, that Petitioner's Ground 2 should be dismissed.

The court further finds that Petitioner's § 2254 Petition is timely.

## IV.
## DISCUSSION OF MERITS

**Ground 1 - The Missouri appellate court incorrectly addressed whether the plea court had a duty to advise Petitioner of the risk of commitment as a Sexually Violent Predator ("SVP") under Missouri's SVP Act, Mo. Rev. Stat. § 632.480:[3]**

---

[3] Under § 632.495 of Missouri's Sexually Violent Predator Act, a person found to be a "sexually violent predator" may be confined to the Missouri Department of Corrections until the "person's mental abnormality has so changed that the person is safe to be at large. Such control, care and treatment shall be provided by the department of mental health."

11

In support of Ground 1 Petitioner argues that Petitioner argued on appeal that "**the risk** of SCP commitment was a definite, immediate, and direct consequence of a guilty plea to a predicate offense under the SVP Act and that Rule 24.02 required the plea court to advise [Petitioner of this definite, immediate, risk of potential SVP commitment as a result of his guilty pleas." Doc. 1 at 7 (emphasis in original). Petitioner further argues that the appellate court erred in finding that commitment as a SVP was a collateral consequence of his guilty plea rather than finding that it was a direct consequence. Doc. 1 at 7. Petitioner contends that fundamental fairness under the Due Process Clause requires that a plea court inform a defendant pleading guilty to a predicate offense for involuntary commitment under Missouri's SVP Act of the potential of involuntary commitment following a prison sentence as a result of a guilty plea. Doc. 1 at 7.

---

Mo. Rev. Stat. § 632.480 defines sexually violent predator as:

[A]ny person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who:

(a) Has pled guilty or been found guilty, or been found not guilty by reason of mental disease or defect pursuant to section 552.030, RSMo, of a sexually violent offense; or

(b) Has been committed as a criminal sexual psychopath pursuant to section 632.475 and statutes in effect before August 13, 1980.

Mo. Rev. Stat. § 632.480 defines sexually violent offenses as:

[T]he felonies of forcible rape, rape, statutory rape in the first degree, forcible sodomy, sodomy, statutory sodomy in the first degree, or an attempt to commit any of the preceding crimes, or child molestation in the first or second degree, sexual abuse, sexual assault, deviate sexual assault, or the act of abuse of a child as defined in subdivision (1) of subsection 1 of section 568.060, RSMo, which involves sexual contact, and as defined in subdivision (2) of subsection 1 of section 568.060, RSMo;

Upon addressing the issue of Ground 1 the Missouri appellate court held:

> In his first point on appeal, movant claims the motion court clearly erred because the plea court failed to inform movant of the possibility of future civil commitment under the SVPA. Movant argues that this failure rendered movant's pleas unknowing and unintelligent.
>
> Missouri adopted the Sexually Violent Predator Act in 1999. This established a procedure for the civil commitment of individuals who are determined to be "sexually violent predators." Section 632.483 RSMo (Cum. Supp. 2002) provides that a person who has been convicted of a sexually violent offense and is scheduled to be released from the Department of Corrections may be evaluated regarding whether that person meets the criteria of a sexually violent predator. Section 632.480 defines the term "sexually violent offense." This definition includes the felony of first degree statutory sodomy and first degree child molestation, offenses to which movant pleaded guilty.
>
> Pursuant to Rule 24.02, the court must inform movant of and determine that movant understands, "[t]he nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law...." Movant argues that the plea court failed to advise him of the maximum sentence he could receive. Movant bases his claim on the fact that because he pleaded guilty to "predicate offenses" to civil commitment under the SVPA, the plea court had a duty under Rule 24.02 to inform him that he could possibly be subject to civil commitment as the "maximum possible punishment" he could receive. However, movant incorrectly characterizes the potential for civil commitment under the SVPA as a direct consequence, rather than a collateral consequence of his guilty plea.
>
> As the motion court noted in its judgment, a similar issue was addressed in <u>Morales v. State</u>, 104 S.W.3d 432 (Mo. App. 2003). In <u>Morales</u>, this court determined that the possibility of civil commitment under the SVPA is a collateral consequence to a movant's guilty plea. <u>Id.</u> at 437. As the court in <u>Morales</u> noted, civil commitment under the SVPA is not an automatic or definite result following a guilty plea to any sexually violent offense. <u>Id.</u> at 435. The SVPA sets forth several procedures which much be followed in order for an individual to be civilly committed as a sexually violent predator. It is not a consequence that definitely, immediately, or automatically follows the entry of a guilty plea. <u>Id.</u> (direct consequences of guilty pleas have been defined as those which "definitely, immediately, and largely automatically follow the entry of guilty plea." (citation omitted)).
>
> Movant attempts to argue that <u>Morales</u> does not apply to the question of whether the plea court has an obligation to inform him of the possibility of future civil commitment because it addressed the issue from the perspective of plea counsel's obligation to inform movant of such a potential consequence. However, although the court in <u>Morales</u> did consider the issue in the context of a claim of plea counsel's

failure to inform the movant of the potential commitment, we believe the rationale applies equally to the plea court's obligation to inform a movant regarding the possibility of civil commitment.

Moreover, movant attempts to argue that the court in Morales failed to consider the principle of fundamental fairness under due process. Movant argues that even if the plea court was not required by Rule 24.02 to advise him of the potential consequence of civil commitment under the SVPA, due process requires the court to inform him of the potential consequence of commitment. In support of this argument, movant cites a New Jersey case, State v. Bellamy, 178 N.J. 127, 835 A.2d 1231 (2003).

In Bellamy, the New Jersey Supreme Court considered whether a defendant, who had pleaded guilty to a predicate offense for commitment pursuant to the New Jersey Sexually Violent Predator Act, was entitled to be informed by the trial court and counsel about the possibility of commitment under the Act. The court found that commitment was not a direct consequence of a guilty plea, but instead was a collateral consequence. 835 A.2d at 1238. However, the court continued, finding that "fundamental fairness" required the trial court to inform the defendant of the possibility of commitment as part of the "nature of the charge and the consequences of the plea." Id. The court reasoned that, "when the consequence of a plea may be so severe that a defendant may be confined for the remainder of his or her life, fundamental fairness demands that the trial court inform defendant of that possible consequence." Id.

The motion court found that Bellamy should not be followed in Missouri, and we agree. The Missouri Supreme Court has determined that, "[d]ue process requires that a person who wishes to plead guilty must be competent to do so and must enter the plea knowingly and voluntarily." State v. Shafer, 969 S.W.2d 719, 731 (Mo. banc 1998). Rule 24.02 was designed to assist in assuring that a defendant entered his plea voluntarily and knowingly, and our court interpreted the dictates of Rule 24.02 in Morales. The trial court is required to inform a movant of only the direct consequences of pleading guilty. Ramsey, 182 S.W.3d 655, 659 (citation omitted). The court is not required to inform the movant of the collateral consequences of his plea. Id. In Morales, this court determined that the potential for future civil commitment under the SVPA is a collateral consequence to a guilty plea. 104 S.W.3d at 437. The courts in Missouri have provided us with precedent on the issue presented by movant, and therefore, we need not look to law from another jurisdiction for guidance. Based upon this court's decision in Morales, the plea court in the present case was not required to inform movant of such a possibility. As a result, the motion court did not err in denying movant's request for post-conviction relief in this regard. Point denied.

Carter, 215 S.W.3d at 208-210. See also In Re Gibson, 168 S.W.3d 72 (Mo. Ct. App. 2004) (holding that a petition for civil commitment of a sex offender as a sexually violent predator did not

violate the equal protection clause of the Constitution because Missouri's Sexually Violent Predator Act was a civil law that was only a collateral consequence of a guilty plea).

Pursuant to Williams, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 1. First, the "relinquishment[] of constitutional rights must be 'done with sufficient awareness of the relevant circumstances and the likely consequences.'" George v. Black, 732 F.2d 108, 110 (8th Cir. 1984). "[A]n accused person need only be informed of direct consequences of a guilty plea" but it "is not necessary to attempt to inform the defendant of all the indirect or collateral consequences." Id. The Eight Circuit holds that "[t]he distinction between 'direct' and 'collateral' consequences of a plea ... turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" Id. (quoting Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir.1973)). [4]

While the Eighth Circuit has not specifically addressed Missouri's SVP Act in regard to whether finding a defendant to be a SVP is a collateral consequence of a guilty plea, the Eighth Circuit has found that use of a guilty plea in subsequent proceedings is a collateral consequence of a guilty plea; it is not a direct consequence. See United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997).

Upon considering the issue of Petitioner's Ground 1 the Missouri appellate court concluded that because confinement pursuant to Missouri's SVP Act was a collateral consequence of Petitioner's guilty plea, the plea court was not required to inform him of the

---

[4] The United States Supreme Court has upheld the constitutionality of a sexually violent predator statute where the confinement criteria of the statute satisfied due process. Kansas v. Crane, 534 U.S. 407, 409-10 (2002) (citing Kansas v. Hendricks, 521 U.S. 346, 357-58 (1997)). The "Supreme Court has permitted states to set their own procedural requirements for civil commitments, including requirements for commitment as a sexually violent predator. Poole v. Goodno, 335 F.3d 705, 708 (8th Cir. 2003). Mo. Rev. Stat. § § 632.483, .484, .486, .489, .492 and .495 establish procedures for finding that a person meets the criteria of a sexually violent predator.

15

possibility that he could be found to be a SVP as a result of his pleading guilty. Indeed, a civil finding that a person is a SVP is not automatic upon a person's pleading guilty to a sexually violent offense. Therefore, a finding that Petitioner was a SVP was a collateral and not a direct consequence of his guilty plea; Petitioner's pleading guilty to sexually violent offenses did not have an automatic effect on the range of the his punishment. See Williams, 104 F.3d at 216; George, 732 F.2d at 110. As such, the decision of the Missouri appellate court was not contrary to federal law and was a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Williams, 104 F.3d at 216; George, 732 F.2d at 110.

**Ground 2 - The Missouri appellate court erred in finding that Petitioner waived his claim that the trial court lacked jurisdiction to convict him of sexual misconduct involving a child because Mo. Rev. Stat. § 566.083 is unconstitutional:**[5]

The court has found above that Petitioner procedurally defaulted Ground 2 and that, therefore it should be dismissed. The court will, alternatively, consider the merits of Petitioner's Ground 2. In support of Ground 2 Petitioner argues that the Missouri appellate court incorrectly concluded that Petitioner waived his claim that Mo. Rev. Stat. § 566.083 is unconstitutional. Petitioner contends

---

[5] Mo. Rev. Stat. § 566.083.1 provides:

1. A person commits the crime of sexual misconduct involving a child if the person:

(1) Knowingly exposes his or her genitals to a child less than fourteen years of age under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm to the child;

(2) Knowingly exposes his or her genitals to a child less than fourteen years of age for the purpose of arousing or gratifying the sexual desire of any person, including the child; or

(3) Knowingly coerces or induces a child less than fourteen years of age to expose the child's genitals for the purpose of arousing or gratifying the sexual desire of any person, including the child.

16

that because the statute under which he was convicted was held unconstitutional the trial court had no jurisdiction to convict him and the judgment against him should be rendered void. Petitioner cites State v. Beine, 162 S.W.3d 483 (8th Cir. 2005) (en banc), to support his claim in Ground 2.

Because the State court did not address Ground 2 on its merits, a pre-AEDPA standard applies. See Robinson, 278 F.3d at 865. First, the Missouri Supreme Court in Beine, upon which Petitioner relies, limited its holding of unconstitutionality to subsection (1) of Mo. Rev. Stat. §566.083.1.[6] Count V of the Information, pursuant to which Petitioner was charged with sexual misconduct involving a child, did not identify a subsection of Mo. Rev. Stat. §566.083 although it identified this statute and described Petitioner's conduct as indecent exposure in that Petitioner exposed his genitals to M.C. Resp. Ex. A at 9. The facts which Petitioner admitted at the plea hearing in regard to Count V come within subsection (2) of Mo. Rev. Stat. § 566.083.1which addresses knowingly exposing one's genitals to a child less than fourteen for the purpose of *sexual gratification*; Petitioner admitted to the plea court, in regard to Count V, that he exposed himself by masturbating to the point of ejaculation. See Resp. Ex. A at 9-10.

Second, in Beine, 162 S.W.3d 483, upon finding that Mo. Rev. Stat. § 566.083.1(1) was over broad and, hence, unconstitutional the Missouri Supreme Court relied on its findings that in Beine "[t]here was no direct evidence as to how a reasonable adult might react to the [defendant's] behavior" and that the evidence could not "reasonably be construed as likely to cause affront or alarm." Beine, 162 S.W.3d at 485. To establish that he is entitled to habeas relief based on the alleged unconstitutionality of Mo. Rev. Stat. § 566.083.1 Petitioner must establish that "under no set of circumstances" could this statute be constitutional. United States v. Salerno, 481 U.S. 739 (1987).

---

[6] The defendant's conduct in Beine was not punishable under subsection (2) or (3) as he knowingly exposed his genitals in a men's restroom where he "stood at a distance from the urinal and urinated in an arc in the presence of boys."162 S.W.3d at 485.

17

"The fact that the [this statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." Id. In Petitioner's case he admitted to the plea court that he exposed his genitals by masturbating in front of M.C. and that this conduct would cause a reasonable person to believe that the contact was likely to cause affront or alarm to a child. Certainly Petitioner's conduct was likely to cause affront or alarm to a child as described in subsection (1) of Mo. Rev. Stat. §566.083.1.

Additionally, upon addressing an argument by a habeas petitioner that a state statute was vague and over broad, the Eighth Circuit has held that "[t]he only possible redress" is for a petitioner to establish that the challenged statute is unconstitutionally vague in that it does "not provide fair notice to persons potentially subject to it." Poole v. Wood, 45 F.3d 246, 249 (8th Cir. 1995) (citing Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)).[7] Petitioner has not done so nor has he demonstrated with a reasonable probability that absent the error complained of in Ground 2 he would not have plead guilty and/or that he would have gone to trial and been acquitted. The court finds, therefore, that Petitioner is not entitled to habeas relief based on Ground 2. See Robinson, 278 F.3d at 865.

# VI.
# CONCLUSION

For the reasons stated above, the court finds that Petitioner's Ground 1 is without merit and that he has procedurally defaulted Ground 2. The court further finds, alternatively, that Petitioner's Ground 2 is without merit. As such, Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise

---

[7] As stated by the Missouri appellate court in Petitioner's appeal, a defendant does not waive a claim that a statute is unconstitutional by pleading guilty as such a claim is jurisdictional. See Marzano v. Kincheloe, 915 F.2d 549 (9th Cir. 1990).

to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of March, 2008.